## LOUISVILLE WATER COMPANY *v.* CLARK.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 1024. Argued November 23, 24, 1891. — Decided January 18, 1892.

The immunity from taxation conferred upon the Louisville Water Company by the legislature of Kentucky by the act of April 22, 1882, 1 Sess. acts, 1882, 915, was withdrawn by the general revenue act of May 17, 1886, Gen. Stats. 1888, c. 92.

The immunity from taxation granted to the company by the said act of 1882 was accompanied by the condition expressed in the act of February 14, 1856, 2 Rev. Stats. Ky. 121, and made part of every subsequent statute, when not otherwise expressly declared, that by amendment or repeal of the former act such immunity could be withdrawn.

The withdrawal of the exemption from taxation conferred upon the company by the act of 1882 put an end to the obligation, imposed upon the company by that act, to furnish water free of charge to the city for the extinguishment of fires, cleansing of streets, etc.

The acquisition by the sinking fund of the city of the stock of the water company, whether before or after the passage of the act of 1882, was subject to the reserved power of the legislature, at its will to withdraw the exemption from taxation, by amending or repealing that act.

THE court stated the case as follows:

The plaintiff in error brought this suit in the Louisville Law and Equity Court for Jefferson County, Kentucky, to obtain a decree preventing the seizure and sale of its property by the

defendant, the sheriff of that county, for State and county taxes assessed for the year 1887. The suit proceeds, in part, upon the theory that the company's property was exempted from all taxation by an act of assembly, passed April 22, 1882, which, it is alleged, constituted, in connection with previous enactments, a contract between it and the State, and that the general statute of Kentucky, relating to the collection of the public revenue, enacted in 1886, and under which alone the defendant could justify the contemplated seizure and sale, impaired the obligation of that contract. The relief asked was granted by the court of original jurisdiction, and the defendant was enjoined from collecting the taxes in question. That decree was reversed by the Court of Appeals of Kentucky, and the cause was remanded with directions to require the plaintiff to pay into court the taxes claimed, or, if it failed in that, the management of its business should be entrusted to a receiver, until an amount sufficient to pay the taxes and costs of litigation was realized. To reverse that decree this writ of error was prosecuted.

Various statutes were referred to in argument as bearing upon the questions presented for determination. Their provisions, so far as it is material, in any view of this case, to advert to them, are as follows:

The Louisville Water Company was incorporated in 1854, without any exemption of its property from taxation, and with authority to establish and maintain, within or near the city of Louisville, reservoirs, engine-houses, pumping machinery, etc., necessary to furnish at all times an abundant supply of fresh and wholesome water to the inhabitants of that city. It was made its duty to furnish water to the city for the extinguishment of fires, and the cleansing of streets, upon such terms as might be agreed between itself and the municipal authorities; and, if the latter assented thereto, the water company was to have the exclusive right to furnish water to the inhabitants of Louisville, by means of pipes and aqueducts, upon such terms and for such time as might be stipulated between it and the city. Sess. Acts, 1853, 1854, vol. 2, p. 121.

Subsequently, by an act approved February 28, 1867, amend-

ing its charter, the water company was authorized, with the consent of the general council of the city, to increase its capital stock, and the city was invested with power to subscribe for such stock or any part thereof, and pay for the same in bonds issued for that purpose. Sess. Acts, 1867, vol. 2, p. 167.

By an act approved March 9, 1867, it was provided, among other things, that the general council of Louisville should not have power to pass ordinances diminishing the resources of the sinking fund of that city as then established, until the city's debts then, or which might subsequently become, chargeable upon that fund, were paid, and that the whole resources of that fund from year to year should be sacredly set apart to the payment of such debts, until they were fully discharged. The mayor, the president of the board of aldermen for the time being and three persons to be chosen by the general council on joint ballot, and their successors in office, were constituted the Commissioners of the Sinking Fund of the city of Louisville, with corporate powers and existence, with authority to do and perform all things necessary to execute the duties required and the powers given them by the act. The funds, estate and income belonging then or subsequently to that fund were vested in and placed under the control and management of said board of commissioners; if injured, withheld or abstracted, the board could sue for and recover the same, or any part thereof, in its corporate name. The commissioners were directed to apply the fund to the payment of the city's debts chargeable on the same when they could do so on fair terms, and when that could not be done, to invest the surplus in bonds of the city, or for which it was bound, or bonds of the State of Kentucky, or in such good and solvent stocks as might be approved on the vote of a majority of each board elect of the general council, by yeas and nays. Sess. Acts of 1867, vol. 2, pp. 417, 420.

A subsequent act, approved March 15, 1869, added to the resources of the sinking fund of the city the stock owned by it in the Louisville Water Company; also an annual tax of forty cents on each one hundred dollars' worth of such real and personal property as might be taxed for city purposes in that city,

to be levied and collected in cash as provided. It also provided that no other than the bonded debt of the city should be charged upon the sinking fund, unless provision was made for the payment thereof at the time of the charge sufficient in the opinion of the commissioners to pay it. Sess. Acts of 1869, vol. 2, p. 462.

The charter of the city of 1870 directed the general council to establish and maintain a fire department, with such force, organization, apparatus, engines, etc., as were sufficient to provide against fires, etc. By that charter it was further declared that the water works, as an institution of the city, should remain as then established by law, but the general council should not take further stock in the company without an ordinance first passed for that purpose, declaring the amount to be taken, how to be paid for, and the tax necessary to be levied to meet the same, which ordinance should be subject to approval or rejection by the qualified voters of the city at a general election called for that purpose; also, that no tax or water rent should be levied for the purpose of paying for the use of water for public purposes, or for paying the expense of conducting and managing the works, except upon the lands and tenements of the water district. Sess. Acts, 1869, 1870, vol. 2, pp. 30, 60, 61.

That charter was amended and the resources of the sinking fund were further increased by the acts of March 3, 1871, and March 21, 1871, investing the commissioners of the sinking fund with power to purchase from the city or from individuals holding the same, certificates of stock in the water company; such stock, when purchased, to be held as a part of the sinking fund of the city. Sess. Acts, 1871, vol. 1, pp. 323, 325; vol. 2, p. 352.

The 4th section of article 12 of chapter 92 of the General Statutes of Kentucky, adopted in 1873, made it "the duty of the president, treasurer or secretary of any gas or water company or association in this State to report, under oath, to the auditor of public accounts, on or before the 10th day of July every year, a full and complete statement of all property, real, personal or mixed, including buildings, engines, machinery,

pipes above and below ground, reservoirs, retorts, tanks, meters, lamp posts, together with any and all other species of property connected with or in any way belonging to or under the control of such gas or water company, and any surplus accumulated, or contingent fund on hand, cash on hand, stocks, bonds or other securities, and the total cash value thereof." · The 5th section of the same article made it " the duty of the president, treasurer, secretary, mayor or agent of any toll-bridge company, incorporated city, mining or other incorporated or manufacturing company, gas or water company or association, in or doing business in this State, under or by virtue of any act of incorporation named in this article, to pay into the treasury, on or before the 10th day of October in each year, a tax upon each one hundred dollars of the value of the property owned, possessed, held or represented by such company, city or association, equivalent to the tax collected upon real estate." Gen. Stat. 1873, p. 745.

It should be here stated that by an act, approved February 14, 1856, entitled " An act reserving power to amend or repeal charters and other laws," it was provided, in respect to all charters and acts of incorporation granted after that date, that " all charters and grants of or to corporations, or amendments thereof, and all other statutes, shall be subject to amendment or repeal at the will of the legislature, unless a contrary intent be therein plainly expressed : *Provided,* That whilst privileges and franchises so · granted may be changed or repealed, no amendment or repeal shall impair other rights previously vested ; " and that " when any corporation shall expire or be dissolved, or its corporate rights and privileges shall cease by reason of a repeal of its charter or otherwise, and no different provision is made by law, all its works and property, and all debts payable to it shall be subject to the payment of debts owing by it, and then to distribution among the members according to their respective interests ; and such corporation may sue and be sued as before, for the purpose of settlement and distribution as aforesaid." 2 Rev. Stats. Kentucky, 121. This act was preserved in the General Statutes adopted in 1873, and was, in express terms, made applicable to all charters and

grants of or to corporations or amendments thereof, "enacted or granted since the 14th of February, 1856." Gen. Stats. Kentucky, 1873, p. 616.

Such were the relations between the State, the City of Louisville and the water company when the act of April 22, 1882, was passed, amending the charter of that company, and exempting it from the payment of taxes of all kinds, state, municipal and special. That act provided:

"1. It shall be the duty of the Louisville Water Company to furnish water to the public fire cisterns and public fire plugs or hydrants of the city of Louisville for fire protection free of charge.

"2. The sinking fund of the city of Louisville being the owner of the stock of the Louisville Water Company, and said water company by virtue thereof is the property of the city of Louisville, therefore the Louisville Water Company is hereby exempt from the payment of taxes of all kinds, of whatever character, state, municipal or special. This act shall take effect from and after its passage." Sess. Acts, 1882, vol. 1, p. 915.

It thus appears that when the act of 1882 was passed as well as ever since February 14, 1856, a general statute of Kentucky reserved the power to amend or repeal all charters and grants to corporations, or amendments thereof, "at the will of the legislature, unless a contrary intent be therein plainly expressed."

On the 17th of May, 1886, a general statute was passed, amending the revenue laws of the State. Acts 1885, 1886, pp. 140, 141, 202. This act has become chapter 92 of the General Statutes of 1888. It declares that "all property, real and personal, within this State, not herein expressly exempt by law, shall be assessed, as nearly as practicable, according to a uniform rate, in the manner hereinafter provided;" and contains a section similar to section 4 of article 12 of chapter 92 of the General Statutes of 1873. It is admitted that the property of the water company is subject to taxation under the act of 1886, unless it was entitled, after and notwithstanding its passage, to the exemption given by the act of April 22, 1882.

The following sections of article 12 of the act of 1886 indicate the extent to which previous laws were affected by it: "§ 5. Chapter 92 of the General Statutes, the act of March 28, 1872, entitled 'An act to amend chapter 83 of the Revised Statutes, title Revenue and Taxation,' the amendment to said act of March 28, 1872, entitled 'An act to amend an act, approved March 28, 1872, authorizing sheriffs to sell real estate to pay revenue tax,' approved April 19, 1873, the act approved April 2, 1878, entitled 'An act to amend section 6, article 6, chapter 92 of the General Statutes,' an act to amend article 2 of chapter 92 of the General Statutes, title, Revenue and Taxation, approved May 8, 1884, and all other acts, general and special, and parts of acts inconsistent herewith, or not in conformity herewith, are hereby repealed; but nothing in this act shall interfere with any existing local option, or any special or prohibition law in any county, nor with any local or general law for creating or collecting county levy, or with chapter 1315 of the acts of 1879, 1880, or with an act entitled 'An act for the benefit of the Branch Penitentiary at Eddyville,' approved April 7, 1886.

"§ 6. Nothing in this act shall be held to repeal, or in any way impair, the force and effect of any local or special act, or any general law now in force, or that may hereafter be passed, providing for the appointment of collectors of state revenue or county levy and poll-tax, in any county of the State, nor shall anything herein be construed to repeal or impair the force of any special or local law giving to counties or towns, for road or street purposes, the fines collected for violations of the road and bridge laws of said county.

"§ 7. That this act shall take effect from and after September 14, 1886; but it shall not operate as a repeal of existing laws as to any assessment made, licenses granted or obligations or penalties incurred under any existing law."

*Mr. William Lindsay* and *Mr. T. L. Burnett* for plaintiff in error. *Mr. H. M. Lane* and *Mr. J. C. Burnett* were on their brief.

The act to amend the charter of the Louisville Water Company, approved the twenty-second of April, 1882, constituted a contract between the plaintiff in error and the State of Kentucky.

This statute, consisting of two sections, should be read as a whole, and construed in the light of all the previous legislation by that State on the subject, viz.: (1) The charter of the Louisville Water Company; (2) The charter of the city of Louisville; (3) The charter of the Commissioners of the Sinking Fund of the city of Louisville; (4) The act of the General Assembly of March 15, 1869, by which the stock in the Louisville Water Company, owned by the city of Louisville, was added to the resources of the sinking fund; (5) That by law all the resources of said sinking fund were to be held and sacredly used for the payment of the principal and interest of the bonded indebtedness of the city of Louisville, including the present and any future indebtedness of said city; (6) That the Louisville Water Company had, prior to April 22, 1882, furnished the public fire cisterns and public fire plugs or hydrants with water for fire protection, and that the city of Louisville had paid for such water; (7) That the said act of April 22, 1882, was accepted by the Louisville Water Company, and from that date to the present time the said water company has furnished to the public fire cisterns and public fire plugs or hydrants, an abundant supply of water for fire protection free of charge; (8) That the water thus furnished for fire protection to the city of Louisville, costs the Louisville Water Company $10,000 annually.

It is well settled tha where a doubt arises in the construction of a statute, though it attaches only to a particular clause, the whole statute is to be considered together, in arriving at the legislative intent. *Commonwealth* v. *Duane*, 1 Binney, 601; *S. C.* 2 Am. Dec. 497; *Commonwealth* v. *Alger*, 7 Cush. 53, 89; *Nazareth Lit. Inst.* v. *Commonwealth*, 14 B. Mon. 266; *Bailey* v. *Commonwealth*, 11 Bush, 688; *Market Co.* v. *Hoffman*, 101 U. S. 112; *Berrida* v. *Silsby*, 21 How. 146, 161; *Nash* v. *Towne*, 5 Wall. 689.

It will not be argued that it was within the legislative

power to require the water company to furnish water for fire protection to the city free of charge. The same power had, by laws previously passed, authorized the parties to contract, one to furnish an abundant supply of water for that purpose, and the other to pay for it. It would not have been more flagrantly unreasonable or unlawful if in lieu of section 1 of the said act it had provided that the water company should pay all the taxes levied by the State on all the property in the city and in Jefferson County, or that the property of the water company should after that date be the property of the city or other corporation or person. To give such a construction would at once declare the first section a nullity and violate the well established rules of construction. If we follow the rules of construction, and take the whole statute together, it will be seen at once that the legislative power of the State made an offer of exemption from taxation, and the reason for such exemption was in consideration of the performance of the services therein named, which offer was accepted and the duties performed.

The object thr to be attained was a public one, for which the Str could l. lke such provisions by legislative enactment as in the judgment of the legislative department would best promote the public her lth and the public comfort, or the protection of public and private property. *Ohio Life Ins. Co.* v. *Debolt*, 16 How. 415; *New Orleans Water Works* v. *Rivers*, 115 U. S. 674; *Newport* v. *Light Company*, 84 Kentucky, 166; *Louisville Water Co.* v. *Hamilton*, 81 Kentucky, 517; *New Orleans Gaslight Co.* v. *Louisiana Light and Heat Producing Manufacturing Co.*, 115 U. S. 650; *Louisville Gas Co.* v. *Citizens Gas Light Co.*, 115 U. S. 683; *Gordon* v. *Winchester Building Ass'n*, 12 Bush, 114; *Mobile* v. *Kimball*, 102 U. S. 691; *State* v. *Morris Aqueduct*, 46 N. J. L. 495; *New Orleans* v. *Clark*, 95 U. S. 644; *Beekman* v. *Saratoga Railroad Co.*, 3 Paige, 44; *S. C.* 22 Am. Dec. 679; *Riche* v. *Bar Harbor*, 75 Maine, 91; *Indianapolis Water Works Co.* v. *Burkhardt*, 41 Indiana, 364; *Kane* v. *Baltimore*, 15 Maryland, 240; *Portland* v. *Portland Water Co.*, 67 Maine, 135; *Spring Valley Water Works* v. *San Francisco*, 52 California, 111; *Dingley* v. *Boston*, 100 Mass. 544.

In 1868 the General Assembly of Kentucky incorporated the Green and Barren River Navigation Company and conferred upon it such corporate powers and privileges as were deemed necessary to enable it to carry out the purposes of its creation. By a provision of the act of incorporation the State leased to the corporation for the period of thirty years the Green and Barren River line of navigation. After the organization of the corporation it complied with the condition of the proposed contract of lease, and took and held possession of the improvements for a number of years. In 1880 the legislature passed an act to repeal, in part, the act incorporating the company. The repeal applied to so much of the act as leased and conveyed to the navigation company the Green and Barren River line of navigation, and the benefits of tolls and revenues arising therefrom. The Court of Appeals of Kentucky held that this repeal could not be held to have divested the company of any of its rights, or to impair the validity of the contract. *Sinking Fund Comm'rs* v. *Green & Barren River Nav. Co.*, 79 Kentucky, 73, 81.

It is submitted that if the legislature can compel the water company to supply water to the fire department of the city of Louisville, free of charge, for the protection as well of the property of the State and Federal government as of the city and its people, and cannot exempt the property of the company from state taxation, or can withdraw the exemption at will, then the State may, in this way and to this extent, legitimately diminish this resource of the sinking fund.

*Mr. James P. Helm* and *Mr. Helm Bruce* for defendant in error.

Mr. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

The contention of the water company that it acquired by the act of 1882 an exemption from taxation which could not be withdrawn by subsequent legislation, without its consent, makes it necessary to inquire whether that exemption was in

fact thus withdrawn; and, if so, whether the statute withdrawing it impaired the obligation of any contract the company had with the State by the act of 1882.

It is clear that the exemption allowed by the act of 1882 was withdrawn by the general revenue statute of 1886. While the former act exempted the water company from taxation of whatever character, state, municipal or special, the latter subjected to taxation *all* property, real and personal, within the State, unless expressly exempted by its provisions. The act of 1886 not only failed to exempt the property of the water company from taxation, but expressly required, as did the General Statutes in force prior to 1882, (art. 12, § 4, c. 92,) that every water company doing business within the State, should make, annually, a full and complete statement, under oath, of all its property, including its surplus or contingent fund, cash, stocks, bonds and other securities. And that there might be no possible doubt as to the scope of that act, the chapter of the General Statutes relating to taxation, and other statutes specially named by their titles, relating to revenue, and *all other* acts and parts of acts, "general *and special*," inconsistent or not in conformity with its provisions, were expressly repealed by the act of 1886. The sweeping character of this repeal is further shown by the specification of certain laws that were excepted from the repeal, which specification did not include the act of 1882. The latter act is special in its exemption of a particular company from taxation. It was, therefore, inconsistent with the revenue act of 1886, which embraced, in terms, all property, real and personal, within the State, not expressly exempted by its provisions from taxation. There is thus a positive repugnancy between the special and general act. This being so, the repealing clause included the special act of 1882, and, therefore, subjected the property of the water company to taxation as provided in the revenue act of 1886. In so holding, we do no violence to the established rule that repeals by implication are not favored, *State* v. *Stoll*, 17 Wall. 425, 431.; *Ex parte Crow Dog*, 109 U. S. 556, 570; *Chew Heong* v. *United States*, 112 U. S. 536, 549); for, under the repeal of all special acts not in conformity with the general statute, the act of 1882, not being

expressly excepted from such repeal, cannot stand with that of 1886.

Was the repeal, which was effected by the revenue act of 1886, in violation of any rights acquired by the water company under the act of 1882? We think not. The act of 1882 contained no clause that "plainly expressed" the intention not to exercise the power, reserved by the statute of 1856, to amend or repeal, at the will of the legislature, all charters of or grants to corporations, or amendments thereof, and other statutes. There was no such reservation in the act of 1854, incorporating the water company, and, therefore, that act was subject to the general statute of 1856. *Hamilton* v. *Keith*, 5 Bush, 458. But, in respect to all the acts passed after 1856, amending the charter of, or relating to, the water company, including that of 1882, each must be read as if all the provisions of the act of 1856 were incorporated in it, because in no one of them is plainly expressed an intent to waive the right of amendment or repeal at the will of the legislature. In this view, the rights acquired by the water company under the act of 1882 were subject to the reserved power of amendment or repeal; saving, whenever that power was exerted, all rights previously vested. In short, the immunity from taxation, granted by the act of 1882, was accompanied with the condition — expressed in the act of 1856 and made part of every subsequent statute, when not otherwise expressly declared — that, by amendment or repeal of the former act, such immunity could be withdrawn. Any other interpretation of the act of 1856 would render it inoperative for the purposes for which, manifestly, it was enacted.

These conclusions are sustained by many adjudications. In *Tomlinson* v. *Jessup*, 15 Wall. 454, 457, which involved the liability to taxation of a corporation, an amendment of whose charter exempted it from taxation, this court said : " It is true that the charter of the company when accepted by the corporators constituted a contract between them and the State, and that the amendment, when accepted, formed a part of the contract from that date and was of the same obligatory character. And it may be equally true, as stated by counsel, that the ex-

emption from taxation added greatly to the value of the stock of the company, and induced the plaintiff to purchase the shares held by him. But these considerations cannot be allowed any weight in determining the validity of the subsequent taxation. The power reserved to the State by the law of 1841 authorized any change in the contract as it originally existed, or as subsequently modified, or its entire revocation. The original corporators, or subsequent stockholders, took their interests with knowledge of the existence of this power, and of the possibility of its exercise at any time in the discretion of the legislature. The object of the reservation, and of similar reservations in other charters, is to prevent a grant of corporate rights and privileges in a form which will preclude legislative interference with their exercise if the public interest should at any time require such interference. It is a provision intended to preserve to the State control over its contract with the corporators, which, without that provision, would be irrepealable and protected from any measures affecting its obligation. There is no subject over which it is of greater moment for the State to preserve its power than that of taxation. . . . Immunity from taxation, constituting in these cases a part of the contract with the government, is, by the reservation of power such as is contained in the law of 1841, subject to be revoked equally with any other provision of the charter whenever the legislature may deem it expedient for the public interests that the revocation shall be made. The reservation affects the entire relation between the State and the corporation, and places under legislative control all rights, privileges and immunities derived by its charter directly from the State."

So in *Railroad Co.* v. *Maine*, 96 U. S. 499, 510, where the question was as to the liability to taxation of a consolidated corporation which came into existence while a general statute was in force, providing that any act of incorporation subsequently passed might be amended, altered or repealed at the pleasure of the legislature, in the same manner as if an express provision to that effect were therein contained, unless there was in the act of incorporation an express limitation or provision to the contrary. In that case the court said: " There was

no limitation in the act authorizing the consolidation, which was the act of incorporation of the new company, upon the legislative power of amendment and alteration, and of course there was none upon the extent or mode of taxation which might be subsequently adopted. By the reservation in the law of 1831, which is to be considered as if embodied in that act, the State retained the power to alter it in all particulars constituting the grant to the new company formed under it, of corporate rights, privileges and immunities. The existence of the corporation and its franchises and immunities, derived directly from the State, were thus kept under its control." To the same effect are *Railroad Co.* v. *Georgia*, 98 U. S. 359, 365; *Hoge* v. *Railroad Co.*, 99 U. S. 348, 353; *Sinking Fund Cases*, 99 U. S. 700, 720; *Greenwood* v. *Freight Co.*, 105 U. S. 13, 21; *Close* v. *Glenwood Cemetery*, 107 U. S. 466, 476; *Spring Valley Water Works Co.* v. *Schottler*, 110 U. S. 347, 352; *Louisville Gas Co.* v. *Citizens' Gas Co.*, 115 U. S. 683, 696; *Gibbs* v. *Consolidated Gas Co.*, 130 U. S. 396, 408; *Sioux City Street Railway* v. *Sioux City*, 138 U. S. 98, 108.

In harmony with these views is the decision of the Court of Appeals of Kentucky in *Griffin* v. *Kentucky Insurance Company*, 3 Bush, 592, where the question was as to the validity of an act, passed in 1868, repealing the charter of an insurance company, granted in 1865, and which did not expressly reserve the power of repeal. The court said: " The charter was certainly a contract with a legal obligation which could not be constitutionally impaired by ordinary legislation. But what is its obligation? Had the charter itself reserved the power to repeal it, that reservation would have been part of the contract, and have moulded its obligation accordingly; and such qualified obligation would not have been impaired by an exercise of that power." After observing that although there was no such reservation in the company's charter there was one in the act of 1856, the proviso of which, while securing the rights of beneficiaries and others, did not affect the mere power to repeal the franchise, the court proceeded: "That statute [1856] in its prospective operation is constitutional, and therefore a law of the State; and, as it has never been repealed, it

applies to the charter of ' The Kentucky Insurance Company,' unless, as argued, the non-reservation in the charter itself of power to amend or repeal it implied a repeal, as to it, of the general statute. But there being nothing in the language of the charter importing any such intention, if the mere pretermission of special reservation of the power to amend or repeal should be construed as a negation of the power, the statute of 1856 would be superflous and inoperative; because, in relation to charters reserving the power, there was no necessity for that enactment, which therefore was intended to operate only on charters which do not reserve the power already reserved by statute. Then, was this general reservation of power, like a special reservation in the charter itself, a part of the contract; or was the contract made subject to it, and the obligation defined or modified by it? We think so. And, whatever might be thought of the policy of such legislation, or of the policy or justice of the repealing statute over which the judiciary has no jurisdiction, our conclusion as to the mere power of repeal is, as we think, sustained by reason and abundant authority."

It is, however, contended that the exemption from taxation could not be withdrawn while the water company remained under the obligation imposed by the first section of the act of 1882 to furnish water to the city for fire protection, free of charge. But no such obligation remained after the passage of the act of 1886, which, as we have seen, had the effect to withdraw the immunity from taxation granted by the second section of the act of 1882. In determining the object and scope of the act of 1882, we must look at all of its provisions. The water company was under a duty by its charter, passed before the act of 1856, to furnish water for the extinguishment of fires and the cleansing of streets, not free of charge, but upon such terms as might be agreed upon by it and the city. And the legislature certainly did not assume to impose upon it the obligation to furnish water, for fire protection, free of charge, except in connection with the grant to it of immunity from taxation. Accepting, however, the benefits of this exemption from taxation, it became bound to supply

water for public purposes, free of charge. But that obligation remained only so long as the exemption continued in force. The act of 1882 is to be regarded as an entirety, and meant nothing more than that the company should furnish water for fire protection, free of charge, so long as the immunity from taxation continued. This view is in harmony with the act of 1856, which expressly declares that whilst privileges and franchises granted to corporations, after its passage, could be changed or repealed, no amendment or repeal should impair other rights previously vested. The effect of the withdrawal of the immunity from taxation was, therefore, to leave the water company in the position it was before the passage of the act of 1882 in respect to its right to charge for water furnished for public fire cisterns, fire plugs or hydrants.

Much reliance was placed by the plaintiff upon *Commissioner's Sinking Fund* v. *Green and Barren River Navigation Co.,* 79 Kentucky; 73, 75, 83. But there is nothing in that case inconsistent with the views we have expressed. It was there decided that the legislature could not consistently with the constitution, or with the above statute of 1856, take from the Green and Barren River Navigation Company, without making compensation therefor, the right it acquired under a contract with the State, concluded in 1868, to take, for a term of years, tolls from vessels navigating Green and Barren Rivers, in consideration of its agreement, which had been fully performed, to maintain and keep in repair, at its own expense, such line of navigation. The case before us presents no such features. As already indicated, in losing an exemption from taxation the water company regained its rights to make such charges for water, furnished for fire protection, as it could rightfully have done before the act of 1882 was passed, and whilst its property was subject to taxation.

We have thus far considered the case as one between the State and the water company as a private corporation. It is not perceived that the result should be different if we regarded the case as one necessarily involving proprietary rights of the city of Louisville, or the rights of creditors whose debts were or are charged upon the sinking fund of that municipality.

The various acts referred to were passed, as was the act of 1882, in view of the general statute of 1856, and, as none of them contained a provision expressly waiving the right of amendment or repeal, it must be held, for the reasons already stated, that the acquisition by the sinking fund of the stock of the water company, whether before or after the passage of the act of 1882, was subject to the reserved power of the legislature, at its will, by amending or repealing that act, to withdraw the exemption from taxation. Such withdrawal did not impair the obligation of any contract rights of creditors whose debts were charged upon the sinking fund, because such rights, whenever acquired, were subject to the power to amend or repeal the statute granting to the water company immunity from taxation. The withdrawal of that immunity, it is suggested, impaired the value of such rights, but, in view of the reservation contained in the act of 1856, that result must have been regarded as possible when those rights were acquired. No right of any creditor has been impaired even in value, except as that result has followed from the reserved power to amend or repeal the statute in question. The act of 1886 has simply restored the water company and all persons interested in it, directly or indirectly, to the situation in which they were when the act of 1882 was passed, and the power to effect that result was reserved by the general statute of 1856, because not expressly waived by the act of 1882.

We, therefore, hold that it was competent for the legislature to withdraw the exemption from taxation granted by the act of 1882. The authority reserved in the act of 1856 to amend or repeal constituted a part of whatever contract was made by the act of 1882, and its exercise, in the present instance, cannot be said to have impaired the obligation of such contract, or, in any just sense, to have impaired rights previously vested.

*Decree affirmed.*

MR. JUSTICE GRAY concurs in the result.