## GEORGE v. THUCAKY et al.
### No. 3740.

District Court, D. Massachusetts.
Dec. 28, 1934.

Louis H. Harriman, of Boston, Mass., for plaintiff.

George Karelitz, of Haverhill, Mass., for defendant Essex Bag Co.

Hubert C. Thompson, of Boston, Mass., for other defendants.

BREWSTER, District Judge.

This is an infringement suit, brought by the assignee of United States letters patent No. 1,871,785, issued to Achilles K. George. The suit was originally brought by Achilles K. George, doing business as the Phœnix Novelty Company, against Keriacos Thucaky and George Alvanos, doing business as the Benevolent Bag Company. The defendant firm has, since the bringing of the suit, been dissolved, and the business of the partnership is now carried on by the Essex Bag Company, Inc., which has been made a party defendant. The assignee of the patent, Christos J. Scumniotales, has been substituted for the original plaintiff, so that the suit now stands with Scumniotales, plaintiff, and George Alvanos and Essex Bag Company, Inc., defendants. The only issues of fact presented on the evidence are whether George was the original inventor and whether the alleged invention was known and used two years prior to the application for the patent.

Statement of Facts.

(1) On October 13, 1930, George filed an application upon which letters patent were issued August 16, 1932. The invention relates to ladies' pocketbooks or handbags made up of small pieces of leather interlaced. It involves a method of construction of the small leather units and the manner of interlacing or interweaving them in the manufacture of bags and pocketbooks.

(2) There are only two claims in the patent which, by the terms, apply specifically to leather bags. The second claim illustrates more fully the method of constructing the bag. This reads as follows: "2. As an article of manufacture, a main body portion folded upon itself to form a bag, the superposed side edges of the body being in alignment, said main body portion consisting of a series of elongated units, each of said units having a plurality of apertures in one end thereof and a plurality of apertured tabs at the other end thereof, said units being interwoven with each unit folded centrally upon itself and having one tab looped through the aperture of an adjacent folded unit and another tab looped through the aperture of another adjacent folded unit, the end apertures of a tab being in register with the apertures in the tabs of a unit, means for joining the side edges of the bag body, said means comprising a strip of folded and interwoven double units, one tab of each of said double units being also looped through the adjacent side aperture of the unit forming part of the side edge of the bag, and the other tab of each said double unit being looped also through the adjacent side aperture of the unit forming part of the other side edge of the bag."

(3) The bags manufactured according to the teachings of the patent are constructed of small units comprising a strip of leather having two or more apertures at one end and a plurality of aperture tabs at the other end; each of these units being folded centrally on itself and looped through the apertures of the adjacent folded unit.

For the purpose of finishing the top of the bag body, single units are used having only one aperture at either end of the unit; these single units being interlaced transversely through the apertures of the folded units constituting the main body of the bag.

(4) Leather units having a plurality of apertures at one end and apertured tabs at the other had been in use for some time prior to George's invention in the manufacture of leather articles such as belts, cushion covers, and even in the manufacture of shopping bags and smaller handbags. It is conceded that the novelty of the invention lay in the means which George had adopted in securing and finishing the edges of the bag. This is accomplished by interlacing double units along the side edges and interlacing transversely single units along the upper edge.

(5) The defendants manufacture and sell leather bags, some of which clearly infringe both claims of the patent in suit. While the defendants' answer could be said to have set up the defense that the invention had been in public use or on sale in this country for more than two years before the application for a patent, the answer gave no notice as to the proof of previous use, as required by Rev. St. § 4920 (35 USCA § 69), leaving the only question open on the pleadings that of infringement. As above indicated, infringement

was clearly established. To avoid delay, however, the plaintiff consented to proceed upon the issue of prior use, upon being given the name and residence of the person alleged to have had prior knowledge and the names of witnesses whose testimony was to be offered upon that issue.

This narrowed the issue of prior use to the single question whether one Stavaros Thomas had manufactured and sold prior to October 30, 1928, ladies' handbags and pocketbooks which contained the novel features referred to in paragraph 4 above.

(6) It was established that Thomas left the United States in 1928. The witnesses were not in agreement as to just when he went, but all agree that he departed before October 30, 1928, and returned some time in 1929. Before the defendant returned, George had conceived and had begun to manufacture his bag, which was later patented. The controversy, therefore, comes to this: Had Thomas, before he emigrated, conceived and used in the manufacture of bags the novel method of binding the sides and top of ladies' handbags disclosed in the George patent? From the more reliable witnesses, I find that Thomas, before he left the United States, was employed by one Arhondi as a cutter of leather trimmings; that he devoted his spare time to the manufacture of leather articles, being particularly interested in manufacturing leather belts with the small units which have been described above. Upon his return to the United States, he manufactured and sold, in substantial quantities, ladies' leather bags, and some of these embodied the novel features of the George patent. Witnesses were called by the defendants for the purpose of showing the kind of bags that Thomas had produced prior to his leaving the United States in 1928. Some of these witnesses were either employees of the Essex Bag Company or relatives of Alvanos. The testimony of others was apparently subject to change without notice. This testimony was of little value. All of the defendants' witnesses were obliged to rely upon their unaided memories. No written documents, entries, or other writings whatsoever were produced to assist the witness in fixing dates. There was evidence tending to show that Thomas had presented some of the witnesses with bags which embodied the patented novelty. The evidence, however, did not remove all reasonable doubt as to when these bags had been donated. The recipients of Thomas' favor thought they had received them six or seven years ago and tried to connect the gift with some outstanding event in the lives of the witnesses, but the sum of this testimony did not remove all reasonable doubt respecting the time when these bags were actually manufactured by Thomas.

(7) The defendants lay stress on the fact that the single leather units, which ran transversely along the upper edge of the bag, bore indications of having been stamped out by dies which were shown to have been at one time the property of Thomas, but this peculiarity is not conclusive, because the evidence was that while Thomas was away George used these dies but did not take them away from Arhondi's place of business, so that they were available to Thomas after his return as well as before his departure.

Weighing the defendants' evidence against that of the plaintiff, to the effect that bags made by Thomas before he left the country were materially unlike the patented bag, the conclusion follows that the defendants have not sustained their burden of establishing prior knowledge and use by that measure of proof which the law requires.

(8) According to the plaintiff's testimony, it does not appear that the infringement had made any material inroads upon his business. His testimony was that his output had increased in the last year.

### Counterclaim.

The defendants have set up, by way of counterclaim, that the plaintiff has indulged in unfair practices by sending to the trade circulars which recite that the plaintiff has secured a patent on bags which do not infringe. I find that the plaintiff's predecessor in title, George, did send out to the trade an announcement that he had been granted a patent on hand-woven leather bags, giving the correct number and date of the patent, and notifying all the makers of his intention to protect his rights under the patent. Incorporated in this circular was a picture of a bag which did accurately show the patented novelty. Later this plaintiff sent out to the trade a similar announcement which bore pictures of several bags, one of which was not covered by the patent. When this was brought to his attention, he stopped sending the circular, and he has no intention of making further use of it. There is some evidence that one of the customers of the defendants had a

459

quantity of bags returned to him after this notice was received, and until that supply had been exhausted this customer made no further purchases of the defendants. This is the only evidence of any injury to the defendants' business. I find it was an innocent mistake on the part of the plaintiff, who believed, in good faith, that his patent covered all the bags depicted on the circular. Undoubtedly the error was due to the failure of the plaintiff to clearly understand the limitations of the patent in suit.

### Conclusions of Law.

While it is quite apparent that George did not make any very considerable contribution to the art, inasmuch as the defense of noninvention has not been seriously urged, the presumption of validity should prevail, especially as it is fortified by the commercial success of plaintiff's bags. It has appeared from the findings of fact that, in order to establish the defendants' defense of prior use, or prior invention, it is necessary to satisfy the court that Stavaros Thomas had invented, disclosed, and sold bags with the novel feature of the George invention before he (Thomas) left this country in 1928. The evidence on this issue was entirely oral testimony of witnesses. This is not sufficient to sustain the heavy burden which the law imposes upon the defendants to prove anticipation by clear and convincing evidence beyond a reasonable doubt. The Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 450, 36 L. Ed. 154; Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523; United Shoe Machinery Corp. v. Day Wood Heel Co. (C. C. A.) 46 F.(2d) 897, 898.

In the Barbed Wire Patent Case, supra, speaking of oral testimony, offered to prove anticipation, the court observed (at page 284 of 143 U. S., 12 S. Ct. 443, 447): "In view of the unsatisfactory character of such testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory, and beyond a reasonable doubt."

Respecting the counterclaim, there was no such intent to deceive the public or injure the defendants as would preclude plaintiff from securing equitable relief. London v. Everett H. Dunbar Corp. (C. C. A.) 179 F. 506; Connecticut Tel. & Electric Co. v. Automotive Equipment Co. (D. C.) 14 F.(2d) 957; Rubenstein v. Slobotkin (D. C.) 33 F.(2d) 603.

The plaintiff, by his circularization, however, may have been instrumental in depriving defendants of sales of noninfringing bags. This may well be offset by the damage done to plaintiff's business by the infringement.

It would seem that equity would be done both parties by declaring the patent valid and perpetually enjoining the defendants, or each of them, from further acts of infringement. The form of decree may be presented by plaintiff's solicitor for approval.