LACKNER CO., Inc., et al. v. NEON PRODUCTS, Inc.

No. 1575.

District Court, N. D. Ohio, W. D.
April 7, 1939.

Theodore Greve and John W. Melville (of Allen & Allen), both of Cincinnati, Ohio, and Freeman Crampton, of Toledo, Ohio, for plaintiffs.

Charles W. Owen (of Owen & Owen), of Toledo, Ohio, for defendant.

KLOEB, District Judge.

This is an action for infringement of U. S. Letters Patent No. 1,850,319, applied for by Harry T. Fensom and Raymond Green, of Los Angeles, California, on July 17, 1929, and issued to the plaintiff, Claude Neon Electrical Products Corp., Ltd., on March 22, 1932, as the assignee of Fensom and Green. The invention had relation to an illuminated advertising sign. The Lackner Company, Inc., joins as party plaintiff as a licensee of the Claude Neon Electrical Products Corp., Ltd.

The defense relied on is invalidity of the claims for (1) anticipation by reason of prior conception and use by others than Fensom and Green, and (2) lack of invention and patentability over the prior art.

The answer and pre-trial stipulations admit many of the allegations of the bill of complaint, and the issues are thereby considerably narrowed. They admit the identity of the parties to the suit, the existence of the patent, the asserted interests of the plaintiffs, the marking of the articles manufactured by plaintiffs and, in addition thereto, admit the infringement of claims 1 and 2 of the patent. In turn, plaintiffs are asserting only claims 1 and 2 of the patent. Infringement therefor is admitted.

The answer avers that Letters Patent No. 1,850,319 is void, for the reason that it was shown or described in certain enumerated prior patents; that, in view of the prior art, the structure disclosed in the said Letters Patent involved no invention, but merely the expected skill, selection and judgment of those skilled in the art; that the said Fensom and Green were not the first inventors of the subject matter, but that the same had been, prior to the alleged invention thereof by said patentees, discovered by and known to and used by the parties listed in the answer, as well as by certain other persons in Los Angeles, California, to-wit, one Emil Freed, who was the proprietor of The National Electric Sign Company of Los Angeles, and M. S. Greenwald, who was the manager of The Truad Company of Los Angeles. Claims 1 and 2 of the patent are as follows:

"1. An advertising device comprising a plate of crystal glass having recessed therein advertising material, and a neon type of tube substantially surrounding the edges of said plate of crystal glass whereby the light from the luminous gas of said tube will pass edgeways through the plate of crystal glass and illuminate the advertising matter recessed therein and the neon tube will form a luminous border for the sign."

"2. An advertising device comprising a plate of crystal glass having recessed therein providing display matter, and a neon type of luminous tube surrounding the edges of the plate of crystal glass, thereby forming a border therefor and being adapted to pass light from the luminous gas of said tubes edgeways through the plates for illuminating the recessed display matter."

I might better state the contentions of the parties to this suit by quoting brief excerpts from the statements of counsel in the trial of the case. Beginning on page 17 of the record counsel for plaintiff states the following:

"When Fensom and Green came along to make their invention, the general state of the sign art was such that what they call X-ray signs were then in existence. An X-ray sign is a sign in which a piece of plate glass has etched in it by sand blasting some advertising message. That advertising message is illuminated by a light source outside of the plate glass which shines through the edge of the glass and illuminates the message. All of the prior art and all of the signs as far as we know in existence when Fensom and Green came into the art had that separate source of light which illuminated the X-ray housed so that it could not be viewed by the reader of the sign. * * * At the time Fensom and Green came into the art with their invention, neon tubes were coming in. They were being used in the sign industry. It was unquestionably old at that time to have the normal type of sign with a neon tube completely surrounding the border and with some other source of illumination to illuminate the message which was on the face of the sign.

"Neon tubing was also used and still is to form the letters themselves of the sign so that it looks like it is written or printed. What the whole art seems to have believed at that time, as is clearly evidenced I think by all of the so-called anticipatory patents cited, and as far as everything we can find, is that the people skilled in the art felt that if they were going to illuminate the etched lettering in a piece of glass, they had to house the light doing it; otherwise the light would overpower and subordinate the message, so that when you tried to read the message, the light which lighted the message would blind you and the message would be completely unsatisfactory. There is nowhere in the art any kind of sign we can find or ever heard of which is illuminated by a source or illumination around the edges, where the source of light which illuminates the etched message is also a part of the sign and makes any kind of border. What Fensom and Green did: they took an etched sign with the letters blasted in, as the plate you inspected, put around that a neon tube and got a very unexpected result. * * * (p. 20) Here the prior art had felt all through in order to make an etched sign attractive, readable and of any use at all, it was necessary to cover the source of illumination so that it did not blind the person who was attempting to read the etched message. * * * (p. 22) Nowhere will you find a combination where there is a luminous border which at the same time illuminates the message of an etched sign. The reason for that is, as I stated before, the art before Fensom and Green came in felt by doing that the luminous border would completely overshadow and detract from the readability and desirability from the etched portion of the sign which carries the advertising message they wanted to get to the public."

On page 44 of the record we find this statement of counsel for the defense: "We will show, and I believe Your Honor has already seen from the patents that were filed with you before the hearing, that it was old at the time the patent in suit was applied for to use Neon tubes or gas-filled tubes as a light source; to extend those tubes around a sign so as to give a border effect, not only a border effect, but also to illuminate the figures or parts of the sign which it was desired to bring out and make stand out. It was also old to use incandescent lamps of various types, that is, small incandescent lamps, around the border of a sign, and tubular types of incandescent lamps such as shown on the exhibits over there, at one or all of the edges of a glass sign. It was also old to use a glass plate with the light source at the edge of the plate so that the light would shine through the plate and illuminate the characters on the sign. The prior art patents are not put in so much as anticipatory of the claims, but as showing the prior art, and in doing so to show want of invention, that is, that no invention would be involved in using a so-called Neon tube as brought out in the patent or an electric lamp, on incandescent lamp, as the light source. One is merely a substitution for the other. All they have done is to substitute one well known type of lamp or light source for another well known type of light source."

I shall turn to the first item of defense, to-wit, anticipation by reason of prior conception and use by others than Fensom and Green.

Counsel for the defense seeks to emphasize the point that, if the plaintiff desires to carry the inventor's date back of his application, in order to overcome prior references and use, his proof must be definite and certain, and, in support of this contention, he quotes from the opinion of Judge Hahn, my immediate predecessor, in the case of Roethel v. Myers Regulator Company, decided January 7, 1937, and reported in 32 U. S. Patent Quarterly, 294. He quotes Judge Hahn as follows: "In order to make inapplicable certain prior art, Roethel has sought to carry back the date of his invention. Under the authorities, to do this he carried the burden of persuading the Court, beyond a reasonable doubt."

I do not disagree with this statement and, on the contrary, admit its soundness. Counsel for the defense, however, in asserting this burden of proof, is assuming that, in the instant case, the plaintiff, in order to substantiate the validity of its patent, is seeking to carry back the date of the invention. He overlooks the fact that the defense is asserting an affirmative defense of anticipation by reason of prior conception and use, and it must first establish beyond a reasonable doubt that such prior conception and use by others than Fensom and Green actually existed.

"The burden of proving that the patent is void is upon the defendant, which he must do by proof beyond a reasonable doubt." Walker, Deller Edition, page 2010.

I am persuaded that the defendant has failed to sustain this burden of proof. It attempts to show that, some time during the month of December, 1928, one Emil Freed, who was the proprietor or manager of The National Electric Sign Company, or National Electric Sign Exchange, of Los Angeles, California, manufactured and sold certain of these neon signs contemplated by the patent in issue, and that the etched plate glass for the construction of these signs was purchased from, and etched by, The Small Signs Department of the plaintiff, Claude Neon Electrical Products Corp., Ltd. It further seeks to show that one M. S. Greenwald, manager of The Truad Company, of Los Angeles, working in conjunction with Emil Freed, constructed and sold one or more of these signs in the month of December, 1928, and that in January, of 1929, he called to his assistance a certain engineer, who was skilled in the preparation of patent applications, sketches, etc., and that he enlisted the services of this engineer for the purpose of preparing an application for a patent. The proofs show that this engineer actually prepared this application, but the proofs further show that this application was never thereafter acted upon or pressed by Greenwald, or any one acting through or under him. The substantial proof in connection with the activities of Freed and Greenwald all points to such activities being confined to a date subsequent to December 1, 1928.

The plaintiff, on the other hand, through the testimony of Fensom and Green, who were, respectively, the manager and assistant manager of The Small Signs Department of the plaintiff corporation in Los Angeles, and through the testimony of other officers and employees of this concern, seeks to establish that, in the early fall or late summer of 1928, and this testimony seems to converge at approximately the month of September, 1928, Fensom and Green constructed one of these signs, and put it on display in The Small Signs Department. It appears that this sign remained on display throughout the fall of that year, and that, during that time, Emil Freed paid an occasional call to The Small Signs Department for the purpose of purchasing plate glass and having certain etchings made thereon.

In the testimony of H. L. Sargent, who was an officer of the plaintiff corporation in the year of 1928, at page 5 of plaintiff's depositions, I find the following:

"Q. 33—I show you Fensom and Green Patent No. 1,850,319 which is the patent in suit and ask you to look at the drawings of said patent, figures 1, 2 and 3, and state what resemblance, if any, the Neon signs manufactured in 1928 by The Small Signs Department, had to said drawings? A.— The signs manufactured in 1928 had a Neon tube around the edge of the glass as shown in the drawings and the plate glass was mounted on some sort of a frame, but not like the one shown in the drawing.

"Q. 34—Did the plate glass have any etched portion as shown in the drawings? A.—Yes.

"Q. 35—When in the year 1928 did you first see a Neon sign manufactured by The Small Signs Department? A.—The first that I can remember is in the fall of that year.

"Q. 36—Well that is somewhat indefinite; can't you fix it more definitely than that by giving the month? A.—In the early fall, I think it probably was September.

"Q. 37—of 1928? A.—of 1928. Yes."

Mr. Sargent then states that he was acquainted with Emil Freed and, after identifying Plaintiff's Exhibit C, which was a sale's invoice issued by Sargent on October 6, 1928, he explained that, on that date, Mr. Freed had brought in certain pieces of glass which he desired to have etched, and that he, Sargent, wrote up this shop order, took the glass and, accompanied by Mr. Freed, walked back to The Small Signs Department; that he there introduced Mr. Fenson to Mr. Freed, and told him that Mr. Freed desired etching done from time to time in the future, and that thereafter they could deal directly with one another. Mr. Sargent states that, at that particular time, this neon sign that had been manufactured by Fensom and Green was on display in The Small Signs Department.

I refer, also, to Plaintiff's Exhibits K and T, which clearly indicate that the plaintiff corporation was manufacturing and selling these signs at least in December, of 1928, and January, of 1929.

The outstanding fact remains that Fensom and Green did thereafter proceed to

file application, and that their assignee, the plaintiff corporation, did thereafter secure a patent on this type of sign.

I am somewhat intrigued with the case of The Barbed Wire Patent, decided by Mr. Justice Brown, of the United States Supreme Court, and found in 143 U.S. at page 275, 12 S.Ct. 443, 450, 36 L.Ed. 154. The third paragraph of the syllabus reads as follows: "When an unpatented device, the existence and use of which are proven only by oral testimony, is set up as a complete anticipation of a patent, the proof sustaining it must be clear, satisfactory and beyond a reasonable doubt."

On page 282 of 143 U.S., 12 S.Ct. page 446, 36 L.Ed. 154, appears the following: "Under such circumstances courts have not been reluctant to sustain a patent to the man who has taken the final step which has turned a failure into a success. In the law of patents it is the last step that wins."

On pages 284 and 285 of 143 U.S., 12 S.Ct. page 447, 36 L.Ed. 154, I find a very fine dissertation on the unsatisfactory character of oral testimony seeking to claim complete anticipation of the patent.

Counsel for the defense is frank in stating that the prior art patents, which he refers to, are put in, not so much as anticipatory of the claims, but as showing the prior art. In this connection, I agree with him that none of these patents cited, in my opinion, anticipate the patent in question. Clearly, the art made use of an etched plate glass with a light reflected through the edges thereof for sign purposes. The art also made use of lights at one or more of the edges of the plate glass, incandescent lamps, that were housed so as to prevent the glare therefrom from overpowering the effect of the etched portion of the glass.

Let us turn to this second defense of the defendant, to-wit, want of invention and lack of patentability over the prior art.

■ I am of the opinion that Fensom and Green made a substantial contribution to the art through the invention of this process of supplying a neon border completely around the edge of a plate glass, and wholly visible to the eye, casting its light through the edge of the plate glass onto the etching thereof. One cannot view the state of the prior art, as disclosed by the exhibits presented in this case, and then turn the eyes to the perfected sign, covered by the patent in question, without instantly realizing that a sharp advance has been made in the art of illuminated signs. Undoubtedly it is true that here was brought into being a combination of prior elements in the art, but this combination did effect a substantial advance that cannot go unrecognized. Turning to the case of Webster Loom Co. v. Higgins, 105 U.S. 580, at page 591, 26 L.Ed. 1177, I find the following: "Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit. It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention."

In the case of Ohio Rake Co. v. Bucher & Gibbs Plow Co., 266 F. 891, which is a case decided by Circuit Judge Knappen of the Sixth Circuit, on June 8, 1920, I find paragraph 2 of the syllabus reading as follows: "A combination of elements, all of which were old, but which produce a new and better result, or the same result in a new and materially better way, is an invention".

That Fensom and Green produced something that attracted the trade is significantly indicated in the testimony of Sam Kamin, a defense witness who, on cross examination, at page 104 of the record, states that during the last three years his company has sold "much under or somewhere near 100,000" signs of the type covered by the patent in question.

■ In conclusion, I hold the Fensom and Green patent valid. A decree may be prepared, carrying into effect the conclusions which the Court has reached, and the parties may prepare findings and conclusions in accordance with the decision of the Court. An injunction may be granted as prayed for, and the matter referred to a Master to make and report an account of damages and profits accruing from defendant's infringement of the patent.